[No. 30928.   Department One.   November 9, 1949.]

THE STATE OF WASHINGTON, *Respondent*, v. BABE MOORE, *Appellant*.[1]

[1]Reported in 211 P. (2d) 172.

*Chavelle & Chavelle*, for appellant.

*Wm. J. Gaffney*, for respondent.

HILL, J.—Appellant was arrested in a raid on the Crescent Rooms in Pasco on March 6, 1948. She was convicted of vagrancy, *i.e.,* keeping a house of prostitution between February 1 and March 6, 1948. She urges that the evidence apart from a confession which she repudiated on the witness stand was not sufficient to sustain the conviction. Appellant relies upon the rule laid down in *State v. Bestolas*, 155 Wash. 212, 283 Pac. 687, that:

"Extrajudicial confessions or admissions, repudiated by the accused upon the witness stand, are, in the absence of

corroborating testimony, either direct or circumstantial, insufficient to prove the *corpus delicti.*"

The extrajudicial confession by appellant, as testified to by the witness Harvey Huston, Jr., was substantially as follows: that she had been running the Crescent Rooms for seventeen years and had owned the property for twelve or fifteen years, and that there had been prostitutes on the premises; that she complied with the notice of November 17, 1947 (hereinafter referred to in more detail, being, in effect, an order by the sheriff and the chief of police to cease and desist operating a house of prostitution); that there were no prostitutes in the Crescent Rooms for some time thereafter; that, beginning about a month prior to the raid on March 6, 1948, the premises were again used for purposes of prostitution, in consequence of the statement of a nice young man, who said he was from the health department, that it would be all right to resume operations, and that she continued so to use the premises until the raid and her arrest on March 6th; that of the four girls arrested that night, one had been with her for about a month and the other three had been there only a few days; that the girls received five dollars a "trick," and that she received five to ten dollars a day from each girl for room and board and commissions, and that it amounted to more when business was better; that she operated an orderly house, served no liquor, and the girls had health examinations once a week and blood tests once a month.

Appellant's position is that she never made the confession. Her defense was that she was in Tacoma and Seattle practically all the time from January 27, 1948, to March 6, 1948, and that during that period the premises were operated by Mrs. Fern Clark under an oral lease; that she returned to Pasco on March 6th and Mrs. Clark went to Portland that day; that she telephoned Mrs. Clark after the raid and the latter did not return to Pasco. Two ladies, one from Tacoma and two from Seattle, corroborated her testimony as to her presence in those cities.

■ As indicated, the law is that, where defendant denies on the witness stand having made an extrajudicial confession or admissions, the prosecution cannot rely solely upon such confession or admissions, standing alone, to establish the *corpus delicti*; but it is equally clear that they may be considered, with other facts and circumstances, for that purpose. *State v. Anderson*, 10 Wn. (2d) 167, 116 P. (2d) 346, and cases there cited; *State v. Grenier*, 29 Wn. (2d) 772, 189 P. (2d) 477.

The evidence exclusive of the confession established that the appellant had had an interest in the Crescent Rooms for some sixteen years and had owned the premises since 1940; that on November 17, 1947, she received notice from the sheriff and the chief of police to cease and desist operating a house of prostitution, discussed the matter with those officers, and admitted at that time that she had three girls in the house; that the premises were being used as a house of prostitution on March 6, 1948, and that appellant was in her room on the premises when they were raided on that date.

■ It seems to us that every purpose of the rule requiring evidence corroborative of a repudiated confession to establish the *corpus delicti* was met by this evidence, and that the confession, together with the evidence corroborative thereof, proved the *corpus delicti* and supported a verdict of guilty.

Appellant urges that, if the court concludes that the evidence was sufficient to sustain the conviction—and we do—she is in any event entitled to a new trial because of four alleged errors.

One of these is that the lower court erred in allowing extensive testimony pertaining to a raid on other premises in Pasco on the same night as the raid on the Crescent Rooms. From the vehemence with which the point was argued, we expected to find the record permeated with references to the raid on the other premises, known as the "Long House." The references to it were in fact few, and for two purposes: (1) to explain the presence of people other than the girls

from the Crescent Rooms in two photographs taken at the sheriff's office; and (2) to establish that the girls from the Crescent Rooms wore no clothing under the house dresses they were wearing when arrested.

■ It was obviously proper to admit evidence relative to the raid on the Long House for the former purpose. Reference to the girls arrested in the raid at the Long House was made necessary for the latter purpose by the fact that the matron who examined the girls at the jail did not know which girls came from the Long House and which from the Crescent Rooms, and so could not testify as to the wearing apparel or lack of it on the girls from the Crescent Rooms.

The prosecutor sought to straighten the matter out by an approach that was both logical and proper, *i.e.*, he endeavored to show (a) that the girls from the Crescent Rooms wore house dresses, (b) that the girls from the Long House were otherwise attired, and (c) that the girls who wore house dresses wore no underclothing; *ergo*, the girls from the Crescent Rooms wore no underclothing. The questions to establish (a), (b) and (c) were not too adroitly phrased, and the trial judge justifiably expressed some impatience, but with the exception of two questions the prosecutor's purpose was clearly proper and there was no wilful violation of any ruling by the trial court, as in *State v. Tweedy*, 165 Wash. 281, 5 P. (2d) 335. The two questions referred to were as follows:

"Q. Sheriff, this woman you refer to as wearing street clothing, who was she? A. She was the Madam from the other house. Q. How old was she? . . ."

Here the court interposed:

"I am afraid you are going too far into this other case. The only reason I am letting in [it] in regard to the Long House is for the reason I stated in the absence of the Jury. . . ."

■ Conceding that the prosecuting attorney went too far afield in the questions set forth, we fail to see wherein the appellant was prejudiced by evidence that the Long House had been raided on the same night as the Crescent

Rooms. Some references to the Long House raid were necessary for the purposes heretofore discussed, and those that were not necessary were, at worst, merely irrelevant and immaterial, and did not constitute prejudicial error. It was not even suggested that appellant had any connection with the Long House, and the trial judge, when the matter first came up, said:

"The Jury will understand we are only trying one case. This Long House deal has nothing to do with this case. In any inferences made concerning the Long House, we are not dealing with that in this case. . . ."

We are convinced that there are few if any trials in which some error cannot be found. We have heretofore held, and now again hold, that, to warrant a new trial, the error must be prejudicial. *State v. Hazzard,* 75 Wash. 5, 134 Pac. 514; *State v. Gaines,* 144 Wash. 446, 258 Pac. 508; *State v. Britton,* 27 Wn. (2d) 336, 178 P. (2d) 341; *State v. Clayton,* 32 Wn. (2d) 571, 202 P. (2d) 922.

Appellant urges that the lower court erred in admitting in evidence exhibit No. 8, and allowing testimony pertaining to its delivery to the appellant on November 17, 1947. Exhibit No. 8 reads as follows:

"Pasco, Wash.
"To Whom It May Concern:        November 17, 1947
"A meeting was held . . . [deletions in ink]. It was unanimously decided that all houses of prostitution should be closed.

"Therefor all houses of prostitution are to close as of date. Persons now operating will not be permitted to operate as rooming houses unless they obtain a leasee of good character. who will operate a legitimate rooming house.

"Abatement proceedings will be filed immediately against any houses found to be in violation of this order.
                    Signed
                              Chief of Police

                              Sheriff of Franklin County"

The chief of police and the sheriff testified that they gave a similar notice to the appellant on November 17, 1947, and

that the appellant had said that there were three girls in the place at that time.

■ The objection made at the trial was that what had occurred on November 17, 1947, was too remote and did not tend to prove an offense within the period designated in the information. The exclusion of evidence because of remoteness rests largely in the sound discretion of the trial court, and the ruling of the court will not be disturbed unless the evidence offered is so remote in time as to be immaterial. *State v. Stevenson*, 169 Wash. 10, 13 P. (2d) 47. The evidence objected to was not too remote, and the trial judge did not abuse his discretion in overruling the objection.

■ Appellant argues in her brief that this constituted admission of evidence of a collateral crime. That objection was not brought to the attention of the trial court, but it is clearly without merit. The evidence was admissible to show appellant's interest in the premises. *State v. Kaukos*, 109 Wash 20, 186 Pac. 269; *State v. Owen*, 161 Wash. 324, 297 Pac. 169.

The admission of exhibit No. 8 could not have been prejudicial, as appellant on cross-examination admitted receiving it from the sheriff and the chief of police, and admitted that there had been two women in the house at that time whom she "assumed" to be prostitutes. *State v. Greiner*, 63 Wash. 46, 114 Pac. 897; *State v. Baker*, 67 Wash. 595, 122 Pac. 335.

■ Appellant also urges that the inclusion of the last four words, "and shall be punished," in instruction No. 6 constituted error. The instruction reads:

"The Statute upon which Count two of the Information is based, and under which this prosecution is brought, is as follows:

" 'Every person keeping a house of prostitution is a vagrant and shall be punished, *** ' "

The words objected to were not necessary, but their inclusion in the instruction did not constitute error. It is generally recognized that those who violate the criminal law should be punished, and the jury was later instructed

to confine its deliberations to the question of guilt or innocence, and not to allow any question of punishment to influence it in arriving at a verdict.

■ Appellant also complains of the admission of exhibit No. 6, which is a photograph of one of the girls from the Crescent Rooms taken while she was getting out of the police car at the sheriff's office. The objection made, "I object—it is highly prejudicial," was not sufficient to direct the attention of the trial court or this court to any error claimed.

Finding no merit in any of the assignments of error, we affirm the judgment of the trial court.

SIMPSON, C. J., SCHWELLENBACH, GRADY, and DONWORTH, JJ., concur.

[1]Reported in 211 P. (2d) 165.