IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31889-3-III |
| Respondent, | ) | |
| v. | ) | |
| WILLIAM MICHAEL LOBIE, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |

FEARING, J. — A jury found William Lobie guilty of possession of a controlled substance, second degree possession of stolen property, and third degree theft. On appeal, Lobie argues insufficient evidence supports his conviction for third degree theft. We disagree and affirm the conviction.

FACTS

On February 1, 2013, someone purloined Maria Arceo Andreade's purse from her vehicle.

On February 2, 2013, William Lobie shopped at the Moses Lake Walmart.

Walmart loss prevention employee Eric Paulson monitored Lobie through the store's extensive video surveillance system. Paulson espied Lobie hide an ink cartridge and a ball cap inside his jacket. Paulson also saw Lobie switch the price tag on a planner.

William Lobie purchased the planner, but not the ink cartridge or ball cap. He then advanced toward the store's exit. Walmart employee Eric Paulson accosted Lobie in the store's vestibule. Paulson asked Lobie to wait for police to arrive, and Lobie complied.

Moses Lake Police Officer Juan Rodriguez journeyed to the Walmart. William Lobie admitted to Officer Rodriguez that he stole ink cartridges and a ball cap. Lobie also confessed to changing the price sticker on the planner to procure a cheaper price. Officer Rodriguez searched Lobie's clothing. Rodriguez unearthed a ball cap in Lobie's sleeve, a baggy of methamphetamine in his pants' front coin pocket, and credit and debit cards from Maria Arceo Andreade's missing purse.

## PROCEDURE

The State of Washington charged William Lobie with possession of methamphetamine, possession of stolen property in the second degree, and theft in the third degree. The latter charge addressed the taking of the planner, ink cartridges, and cap. During trial, Lobie testified that the pants he wore in Walmart on February 2, belonged to a roommate. He testified that he found Andreade's purse on the side of the road, with its contents strewn about, and hoped to return the purse and cards to their

2

owner for a reward. Lobie testified that he went to Walmart's vestibule to meet his girlfriend, who he hoped would pay to purchase the ink cartridges and ball cap. Lobie admitted to a stupid mistake of switching the price tag on the planner.

A Grant County jury found Lobie guilty on all three charges.

## LAW AND ANALYSIS

On appeal, William Lobie challenges the sufficiency of evidence to convict him of third degree theft. He does not challenge his two other convictions.

Due process requires the State to prove, beyond a reasonable doubt, every element of the crime charged. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). When a defendant challenges the sufficiency of the evidence underlying his conviction, he admits the truth of the State's evidence and all inferences that reasonably may be drawn from the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). This court views the evidence in the glow most favorable to the State and asks whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 220-21, 616 P.2d 628 (1980).

The State charged William Lobie with theft in the third degree in violation of RCW 9A.56.050. The statute provides in relevant part:

> (1) A person is guilty of theft in the third degree if he or she commits theft of property or services which (a) does not exceed seven hundred fifty dollars in value. . . .
> (2) Theft in the third degree is a gross misdemeanor.

3

RCW 9A.56.020 defines theft as:

> (1) "Theft" means:
> (a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services; or
> (b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services; or
> (c) To appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him or her of such property or services.

William Lobie forwards the corpus delicti rule and claims that *State v. DuBois*, 79 Wn. App. 605, 904 P.2d 308 (1995) controls his challenge to the sufficiency of evidence for his third degree theft conviction. *Black's Law Dictionary* 419 (10th ed. 2014) defines "corpus delicti" as: "the simple principle that a crime must be proved to have occurred before anyone can be convicted for having committed it." In the Anglo-American legal system, the concept of corpus delicti divides into several related and unrelated principles. First, an accused's out-of-court confession, alone, is insufficient evidence to prove his or her guilt beyond reasonable doubt. Second, without first showing independent corroboration that a crime happened, the prosecution may not introduce evidence of an accused's statement. Third, an accused cannot be convicted solely on the testimony of an accomplice. Fourth, when a person disappears and cannot be contacted, a "body" of evidentiary items, including physical, demonstrative, and testimonial evidence, must be obtained to establish that the missing individual has indeed been murdered before a

4

suspect can be charged with homicide. William Lobie relies on the first principle.

Extrajudicial admissions and confessions are inadmissible unless the State submits independent proof of the corpus delicti. *State v. DuBois*, 79 Wn. App. at 609; *State v. Solomon*, 73 Wn. App. 724, 727, 870 P.2d 1019. On a corpus delicti challenge, a court must look to the independent evidence to corroborate an admission, before a jury may consider the acknowledgement. Proof of the corpus delicti generally requires two elements (1) a specific injury or loss and (2) someone's criminal act as the cause of the injury or loss. *State v. Mason*, 31 Wn. App. 41, 48, 639 P.2d 800 (1982). The independent evidence need not establish the corpus delicti beyond a reasonable doubt or even by a preponderance; rather, the evidence is sufficient if it prima facie establishes the corpus delicti. *State v. DuBois*, 79 Wn. App. at 609. "Prima facie" in this context means evidence of sufficient circumstances which would support a logical and reasonable inference of the facts sought to be proved. *Bremerton v. Corbett*, 106 Wn.2d 569, 578-79, 723 P.2d 1135 (1986). In assessing the sufficiency of the proof of corpus delicti, the reviewing court views the evidence and all reasonable inferences therefrom in the light most favorable to the State. *State v. Smith*, 115 Wn.2d 775, 782 n.1, 801 P.2d 975 (1990). Our Supreme Court has declined to abandon the corpus delicti rule in favor of the federal corroboration rule, which requires only that the evidence tend to establish the trustworthiness of the confession. *State v. Smith*, 115 Wn.2d at 784 n.2.

In *State v. DuBois*, this court reversed Nicole Bustamante's conviction for third

5

degree theft based on Washington's corpus delicti rule. Bustamante walked through the check stand of a grocery store, but did not purchase cigarettes. The next customer told the cashier that she saw Bustamante put an object in her pocket. The cashier did not see Bustamante's action and could not see the cigarette rack from his check stand. The cashier commandeered Bustamante outside the store and asked what she placed in her pocket. Bustamante removed a pack of cigarettes from her pocket and exclaimed, "I'm sorry; I'll pay double." *DuBois*, 79 Wn. App. at 608. The informant did not testify at trial.

The *DuBois* court addressed the admissibility of Nicole Bustamante's admission. Applying the corpus delicti rule, the court reasoned that the evidence independent of Bustamante's admission and confession only showed that Bustamante did not purchase any cigarettes at the store and that the cashier recovered a pack of cigarettes from her shortly after she left the store. The cashier did not observe Bustamante remove the package of cigarettes from the rack or observe any suspicious activity. The State presented no evidence of distinctive packaging or a price tag that could tie the cigarette pack to the store. The only independent evidence suggesting a criminal act was the customer's statement to the cashier that she saw Bustamante place something in her pocket, and this evidence was barred as hearsay. The court ruled the evidence insufficient to support Bustamante's conviction for third degree theft.

Relying on *Dubois*, William Lobie argues that the State of Washington failed to

6

present any evidence to connect the ink, cap, or planner found on his person to Walmart. *DuBois*, however, lies far from this appeal on any spectrum of facts. Walmart's Eric Paulson saw Lobie hide the ink and cap in his jacket and change the price sticker on the planner. Subsequent evidence of distinctive packaging or a price tag was unnecessary to show that the items were the property of Walmart, because Paulson saw Lobie secrete the items while inside Walmart.

On a sufficiency of the evidence challenge, this reviewing court may consider an admission properly before the jury. *State v. Brockob*, 159 Wn.2d 311, 339, 150 P.3d 59 (2006). Thus, we may consider Lobie's admission that he switched the price tag to a lower price and his admission that he exited to Walmart's vestibule without paying for the ink and cap. A rational jury could rely on Eric Paulson's, Officer Juan Rodriguez's, and William Lobie's testimony to find that Lobie exerted unauthorized control over the ink, cap, and planner, and that these items were the property of Walmart. Sufficient evidence supports the jury's verdict.

## CONCLUSION

We affirm William Lobie's conviction for third degree theft.

No. 31889-3-III
*State v. Lobie*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Korsmo, J.

8